## A90A0020. STEVENS v. THE STATE.
(393 SE2d 482)

BEASLEY, Judge.

Stevens appeals his conviction and sentence for embracery, OCGA § 16-10-91 (a) (1), asserting error in the court's permitting the prosecutor to ask a State's witness if she was aware of defendant's general reputation in the community.

Two of the State's witnesses, Mr. and Mrs. Cureton, were selected for the jury to try Lamar Jenkins on a charge of burglary. After selection, the jury was dismissed until the following day. That afternoon defendant drove to the Curetons' home and spoke to Mr. Cureton, his wife overhearing parts of the conversation from a distance. The testimony of the Curetons was, and defendant agreed, that he inquired if Mr. Cureton was going to serve on a jury and Cureton responded "a Jenkins' boy's case." Defendant informed Cureton that Jenkins was "my nephew." According to Cureton, defendant stated "they were trying to set [Jenkins] up" and related some details as to what happened. Defendant asked Cureton to be fair and was assured by Cureton that he "always tried to listen to everything and be fair." Mrs. Cureton corroborated her husband's testimony that defendant stated Jenkins was being "set up." She did not hear any additional details. Defendant could not remember saying "they are trying to set up" his nephew but did not deny it. He did deny giving embellishing comments about the circumstances of his nephew's case.

The next day the jury was polled individually as to outside contact. Mr. Cureton was excused when he told of the encounter with

defendant. Mrs. Cureton served as part of an eleven person jury but asked to be excused, and was, after hearing some of the testimony. A mistrial was declared and defendant was indicted for embracery.

At the beginning of defendant's trial, but out of the presence of the jury, the District Attorney indicated he intended to ask Mrs. Cureton about her knowledge of defendant's general reputation in order to establish her perception of a threat from him. Defendant objected "[i]f she's going to testify as to my client's bad character and reputation as to a criminal and crook and everything else." After argument the court ruled: "Well, she can testify as to her reasons, as long as it's not strictly hearsay, except by general reputation." Later, during direct examination of Mrs. Cureton, the District Attorney asked if she was acquainted with defendant's reputation in the community. Objection was interposed that it was not a "proper question." The objection was overruled and Mrs. Cureton answered affirmatively. The District Attorney then inquired: "[K]nowing his reputation, what did that make you feel about him having contacted your husband about . . . Jenkins' case?" She replied: "[A]ctually, it was some of the testimony that made me think about it." Then she explained: "It wasn't because . . . I knew them and all, but it was what they said during the case that . . . made me think a lot about it, and . . . I kind of felt like it might have been true, which it might not have been, but I couldn't get over that part." So she asked to be excused.

On cross-examination defense counsel asked Mrs. Cureton: "What began to bother you about this was that you had prior knowledge of [defendant] or you knew something about [his family] and it began to bother you, you felt like you couldn't be impartial?" She answered: "No. It was something that was said in the court case." On re-direct, Mrs. Cureton responded "yes" to the question whether she was concerned "about the family?" She explained: "I don't worry about myself, but I do . . . have concern for my children." This entered into her decision to be removed from the jury because the "way I felt about the case, . . . I couldn't be fair with the boy, . . . couldn't give fair judgment." Only the initial objection was made to any of the subject testimony.

One of the ways in which "Embracery" is committed is when a person "[w]ith intent to influence a person summoned or serving as a juror, communicates with him otherwise than is authorized by law in an attempt to influence his action as a juror." OCGA § 16-10-91 (a) (1). From an appellate perspective this is a comparatively rare crime, and definitive exposition is scarce. *Summers v. State*, 66 Ga. App. 648, 650 (19 SE2d 28) (1942), explains: "[E]mbracery at common law '[c]onsists in any attempt whatever to corrupt, or influence, or instruct a jury in the cause beforehand, or in any way to induce them to

be more favorable to the one side than to the other, by money, promises, letters, threats, or persuasions, except only by the strength of evidence and the arguments of counsel in open court at the trial, whether the jury give a verdict or not, or whether the verdict given be true or false.' "

Testimony introduced by the State regarding defendant's character may be admissible where it is relevant and material and when it is offered for a valid purpose. *Walraven v. State*, 250 Ga. 401, 407 (4b) (297 SE2d 278) (1982); *Tiller v. State*, 196 Ga. 508 (3) (26 SE2d 883) (1943); *Nelson v. State*, 181 Ga. App. 481, 482 (2) (352 SE2d 804) (1987).

The State sought to elicit the victim's perception of whether defendant's statements were threatening. Regardless of whether this was a proper purpose to pursue on direct examination of the witness, no basis for reversal appears. After answering affirmatively the question of whether she was familiar with defendant's reputation, the witness did not say what that reputation was. When pressed as to why she asked to be excused, she explained that it had to do with something that was brought out during the presentation of evidence and did not attribute her actions to knowledge of defendant's character. Only during redirect were there any implications as to the status of defendant's character. She stated in effect that because of what she knew about defendant (but did not explain what that was) she was "concerned" for her children. No objection was made to this testimony.

Where an objected-to question is not answered by the witness there is no harmful error. *Jackson v. State*, 233 Ga. 529, 531 (4) (212 SE2d 366) (1975). For all practical purposes, this was an unanswered question.

It is "highly probable" that error, if any, in permitting the question did not contribute to the judgment. *Little v. State*, 165 Ga. App. 389, 392 (3) (300 SE2d 540) (1983). Defendant failed to demonstrate harm in the overruling of the sole objection he made. There is no remedy for error without harm. *Robinson v. State*, 229 Ga. 14, 15 (1) (189 SE2d 53) (1972).

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED APRIL 5, 1990.

*John R. Emmett*, for appellant.
*Ralph Van Pelt, Jr., District Attorney*, for appellee.